CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 1 2 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MICHAEL MARCAVAGE, et al., | |
| Plaintiffs, | Civil Action No. 5:10-cv-00114 |
| v. | MEMORANDUM OPINION |
| CITY OF WINCHESTER, VIRGINA, et al., | |
| Defendants. | By: Samuel G. Wilson<br>United States District Judge |

This is an action pursuant to 42 U.S.C. § 1983 and state law by plaintiffs, Repent America, a self-styled evangelistic and Christian liberties organization based in Philadelphia, Pennsylvania and its director, Michael Marcavage, against the City of Winchester, Virginia and two of its police officers, Kevin Sanzenbacher and J.M. Danielson, arising out of the alleged enforcement of Winchester's noise ordinance at Winchester's 2010 Apple Blossom Festival. Plaintiffs allege that Winchester's noise ordinance is facially invalid under the First and Fourteenth Amendments of the United States Constitution, Article 1, §12 of the Virginia Constitution and Virginia's Religious Freedom Restoration Act, Virginia Code § 57-2.02, and that the officers impermissibly applied the ordinance to Marcavage.[1] Plaintiffs have moved for judgment on the pleadings under Rule 12(c) on their facial challenge to the ordinance; the individual defendants have moved to dismiss based on qualified immunity; and Winchester has moved to dismiss plaintiffs' facial challenges to the ordinance because the challenges lack merit and because plaintiffs lack standing. The court finds that Sanzenbacher and Danielson are entitled to qualified immunity for their actions and therefore dismisses plaintiffs' damage claims against them. However, the court finds disputed facts material to the question of whether the

---

[1] The court has federal question jurisdiction over the plaintiffs' federal claims under 28 U.S.C. § 1331, and the plaintiffs assert supplemental jurisdiction over the plaintiffs' Virginia law claims under 28 U.S.C. § 1367(a).

plaintiffs have standing to mount a facial challenge to the Winchester ordinance and will hold an evidentiary hearing to determine those facts.

I.

Marcavage and other members of Repent America decided to attend Winchester's Apple Blossom Festival on May 1, 2010, in order to express their religious beliefs to festivalgoers from public streets and sidewalks using an amplifier.[2] Marcavage called Sanzenbacher, Winchester's Chief of Police, before making the trip in order to ensure his planned use of the amplifier would not violate any of Winchester's ordinances. Sanzenbacher informed Marcavage that his planned activities, as he had described them, would not violate any ordinances.

Marcavage and other members of Repent America attended the Apple Blossom Festival and used an amplifier as they had planned. Danielson approached Marcavage claiming he had received a complaint about Marcavage's activities and asked him to cease using the amplifier. Marcavage produced a copy of Winchester's noise ordinance, and argued that his activities were in compliance. Danielson reviewed the ordinance and informed Marcavage that the following three Winchester City Code provisions proscribed Marcavage's activities:

> (a) It shall be unlawful for any person to make, continue, or cause to be made or continued any excessive, unnecessary, or unusually loud noise, or any noise which unreasonably annoys, disturbs, injures, or endangers the comfort, health, safety, welfare, or environment of others within the corporate limits of the City.
>
> (b) Acts declared unlawful by this section shall include, but not be exclusively limited to, the following:
> . . .
> (2) To play, operate, or permit the operation or playing of any radio, television, phonograph, tape player, drum, musical instrument, sound amplifier or similar device which produces, reproduces, or amplifies sound in such a manner as to create a noise disturbance within any nearby dwelling unit or across a real property boundary.

---

[2] Because the plaintiffs' motion under Rule 12(c) requires the court to consider the facts pleaded in the defendants' answer as well as those that the plaintiffs have provided in the complaint, A.S. Abell Co. v. Balt. Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964), the court recites the facts alleged in both parties' pleadings. Where the parties' allegations are inconsistent, the court notes their disagreement.

2

> (3) The making by any person of unreasonably loud or unnecessary noise including, but not limited to, that made by the human voice in public places so as to annoy or disturb unreasonably the comfort, health, welfare, environment, peace or safety of persons in any office, dwelling, hotel or other type residence, or of any person in the vicinity.

Winchester City Code Ch. 17, §§ 17-6(a), (b)(2)-(3).

The parties offer conflicting accounts of what happened next. According to Marcavage's affidavit, Danielson ordered Marcavage to cease and desist using the amplifier. Danielson claims that he only told Marcavage to reduce the volume of the amplifier. After the conversation with Danielson, Marcavage called Sanzenbacher to complain about Danielson's interpretation of the ordinance. Marcavage recalls that Sanzenbacher affirmed Danielson's order that Marcavage's use of the amplifier violated the ordinance. Sanzenbacher states that he told Marcavage he could continue to use the amplifier, but that if another citizen complained about the volume, an officer would independently assess the reasonableness of the volume and issue a citation if appropriate. Both sides agree that the plaintiffs continued to use the amplifier for several hours after these conversations took place, and that the plaintiffs did not receive any citations for violating the ordinance. The plaintiffs allege that they plan to attend the Apple Blossom Festival in future years and once again use an amplifier to express their views. They are seeking a judgment declaring the ordinance to be invalid, an injunction enjoining its enforcement, and damages.

## II.

Sanzenbacher and Danielson have moved to dismiss the damage claims against them on the ground that they have qualified immunity for their actions in enforcing the ordinance. The court agrees, and grants their motion to dismiss.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

3

rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Police officers are entitled to assume a validly enacted law is constitutional "until and unless they are declared unconstitutional," unless that law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Michigan v. DeFillippo, 443 U.S. 31, 38 (1979); see also Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991) ("Absent extraordinary circumstances, which are not present here, liability will not attach for executing the statutory duties one was appointed to perform.").[3]

Here, the Winchester ordinance had not been declared unconstitutional by any court before the 2010 Apple Blossom Festival. The plaintiffs note that the Virginia Supreme Court had recently declared a similar ordinance adopted by the City of Virginia Beach unconstitutional, see Tanner v. City of Va. Beach, 277 Va. 432 (2009), and argue that any reasonable police officer would have known therefore that the Winchester ordinance was unconstitutional as well. However, their argument ignores the principle that "when a city council has duly enacted an ordinance, police officers on the street are ordinarily entitled to rely on the assumption that the council members have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority." Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994); cf. Pierson v. Ray, 386 U.S. 547, 555 (1967) ("A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."). Police officers are not required to analyze case law to discern subtle differences or similarities that may render

---

[3] Other circuits have held that police officers are entitled to qualified immunity even when enforcing a law that has been previously found unconstitutional, as long as that law is still "on the books" and the officer has an objectively reasonable belief that it remains valid. Amore v. Novarro, 624 F.3d 522, 534-35 (2d Cir. 2010).

4

legislation constitutionally infirm. Thus, Sanzenbacher and Danielson were entitled to assume that the ordinance was valid at the time of the events giving rise to this suit.

Even if the officers were not entitled to rely on the presumptive validity of the ordinance, the plaintiffs have not demonstrated that the ordinance is unconstitutional as a matter of clearly established federal law. While the Tanner court invalidated another city's ordinance that contained similar or analogous language, other courts have upheld arguably indistinguishable ordinances. See, e.g., Asquith v. City of Beaufort, 139 F.3d 408 (4th Cir. 1998) (finding that the plaintiffs challenging a noise control ordinance that prohibited "loud and unseemly noises" were not likely to succeed on the merits of their claims, and vacating an injunction ordered by the district court on their behalf). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Marciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). Here, the officers transgressed no bright lines in enforcing the ordinance, and are therefore immune.

Because Sanzenbacher and Danielson did not violate the plaintiffs' clearly established rights in enforcing the ordinance, they are entitled to qualified immunity for their actions. Accordingly, the court dismisses the damage claims against them.[4]

### III.

Winchester has moved to dismiss the plaintiffs' claims that the ordinance is unconstitutional on its face because the ordinance is a narrowly tailored, content neutral restriction on speech which is not unconstitutionally vague or overbroad. In response, the plaintiffs have moved for judgment on the pleadings, arguing that the ordinance's prohibitions on

---

[4] The plaintiffs also may not seek damages against the individual defendants for their state law claims. Virginia Code § 57-2.02(D) prohibits plaintiffs from collecting monetary damages for violations of that section. Further, individual police officers engaging in discretionary functions have sovereign immunity for their actions in the absence of gross negligence, Colby v. Boyden, 241 Va. 125, 129 (1991), and the plaintiffs have not charged Danielson and Sanzenbacher with gross negligence nor have they pleaded facts sufficient to plausibly support such a claim.

5

"unnecessary" noise, or noise which "unreasonably annoys," render it constitutionally infirm. The court finds material issues of fact as to whether, as a threshold matter, the plaintiffs' have standing to challenge the ordinance, and therefore will hold these motions under advisement and conduct an evidentiary hearing on the standing issue.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). In order to establish that such a case or controversy exists, the plaintiffs must demonstrate that they have standing to sue. Id. at 750-51. To do so, the plaintiffs must show: (1) that they suffered "suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "a causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted). "There is . . . a de minimis level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977); see also New Creation Fellowship of Buffalo v. Town of Cheektowaga, 164 Fed. App'x 5, 7 (2d Cir. 2005) (holding that the defendant's persistent attempts to enforce a tree preservation ordinance against the plaintiff's property constituted "minor inconveniences . . . insufficient to satisfy the injury-in-fact requirement for Article III standing"); Am. Civil Liberties Union of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 786 n.6 (4th Cir. 1993) (prison officials' decision to withdraw previously granted privileges to an ACLU lawyer did not constitute a cognizable injury under the First Amendment).

As set forth above, the parties have provided conflicting versions of what occurred at the festival. Given these conflicting accounts, the court finds that an evidentiary hearing is

necessary to assess the credibility of the witnesses and evaluate whether the plaintiffs suffered an injury in fact sufficient to satisfy the requirements of Article III of the Constitution. For these reasons, the court will hold the motion to dismiss and the motion for judgment on the pleadings under advisement until after the court has held an evidentiary hearing to decide the issue of standing.[5]

## IV.

For the reasons stated, the Court dismisses plaintiffs' damage claims against Danielson and Sanzenbacher based on their qualified immunity. The court holds Winchester's motion to dismiss the plaintiffs' remaining claims and the plaintiffs' motion for judgment on the pleadings under advisement until the court holds an evidentiary hearing on the issue of standing.

**ENTER**: July 12, 2011.

UNITED STATES DISTRICT JUDGE

---

[5] As an association, Repent America has standing to bring a claim on behalf of its members, even when the association itself has suffered no injury, so long as one of its members has suffered such an injury. See Warth v. Seldin, 422 U.S. 490, 511 (1975). Thus, the defendants' motion to dismiss Repent America for lack of standing will necessarily depend on the same factual development required to assess whether Marcavage has standing to sue.